645 So.2d 504 (1994)
Jose Manuel TIZON, Appellant,
v.
ROYAL CARIBBEAN CRUISE LINE, et al., Appellees.
No. 92-2533.
District Court of Appeal of Florida, Third District.
October 12, 1994.
Rehearing Denied December 14, 1994.
Charles R. Lipcon, Cooper & Wolfe and Christine M. Ng and Sharon Wolfe, Miami, for appellant.
Keller Houck & Shinkle, Hicks, Anderson & Blum and Mark Hicks, Miami, for appellees.
Before BASKIN, JORGENSON and GREEN.
PER CURIAM.
This is an appeal from a final judgment entered pursuant to a jury verdict for personal injuries allegedly sustained by Jose Manuel Tizon ("Tizon") during the course of his employment on a ship owned and operated by Royal Caribbean Cruise, Line, A/S Royal Caribbean Cruises, Ltd. ("RCCL"). Tizon sued RCCL for, among other things, Jones Act, 46 U.S.C.App. § 688, negligence, unseaworthiness and maintenance and cure. On appeal, Tizon cites six points as error, one of which warrants discussion and reversal for a new trial.
Tizon was a wine steward on the cruise ship Sovereign of the Seas. Tizon's primary task was to serve wine to passengers at the two dinner sittings. Tizon was also assigned the task of washing glasses between the sittings. On August 8, 1990, Tizon says that he slipped on some liquid which had accumulated around the racks of dirty glasses. He claims that he fell and twisted his back while he was rushing around trying to get the glasses washed for the second dinner period. Tizon further alleged that he not was given rubber boots to wear similar to those provided to the ship's dishwashers.
On the day after his injury, Tizon went to see the ship's doctor and complained of back pain. The doctor gave him some anti-inflammatory *505 medication and sent him back to work. On that same day, Tizon had to move cases of wine and champagne for storage. After moving the boxes, Tizon claims he had pain in his back which radiated down to his legs. Tizon went back to the ship's doctor who ultimately signed him off the ship on August 11, 1990. The doctor sent Tizon to the Sunshine Medical Clinic, which has an office at the Port of Miami. The Sunshine Medical Clinic referred Tizon to Dr. Carvajal, an orthopedic surgeon, who diagnosed a possible herniated disk.
On October 18, 1990, Tizon went to see Dr. Lustgarten, a neurosurgeon. Dr. Lustgarten also diagnosed a herniated disk. In December 1990, Dr. Lustgarten performed surgery on Tizon's back to relieve his pain. The surgery confirmed a herniated disk. Dr. Lustgarten testified that based upon the history given by Tizon, it was within reasonable medical probability that Tizon had herniated his disk during the incident on August 8, 1990.
The case went to trial before a jury. The jury returned a defense verdict on the issues of negligence and unseaworthiness. On the issue of maintenance and cure, the jury awarded Tizon $17,000, a matter not the subject of the instant appeal.
Tizon asserts, among other things, that the trial court erred during voir dire by refusing to excuse a prospective juror for cause who indicated repeatedly that she could not be fair and impartial:
Mr. Lipcon: ... Mr. Tizon had surgery for a herniated disk and pressure on his nerves running down into his leg or legs.
Have any of you ever had spinal surgery? When I say "you" I mean you or your family members, spouse, or children.
Yes, ma'am.
Juror Safinski: My husband had the same thing.
Mr. Lipcon: How long ago was that, approximately?
Juror Safinski: Almost two years.
Mr. Lipcon: And how is he doing?
Juror Safinski: Fine.
Mr. Lipcon: Is he?
Juror Safinski: Fine.
Mr. Lipcon: Did he make a good recovery?
Juror Safinski: Yes.
Mr. Lipcon: Does he have any limitations? The doctor told him don't do that, you know?
Juror Safinski: No.
Mr. Lipcon: ... Okay. Mrs. Safinski? Did I pronounce that right?
Juror Safinski: Yes.
Mr. Lipcon: Can you put out of your mind what your husband went through in spinal surgery and listen to what Mr. Tizon went through, because, you know, everybody turns out differently and things like that and we're going to have the doctors here and the records and Mr. Tizon will say what he has been through, so can you put that aside?
Juror Safinski: Everyone that I know that has had that surgery has had very good results.
Mr. Lipcon: Would you put that aside?
Juror Safinski: I think it would be kind of tough.
Mr. Lipcon: You think you would have a difficult time doing that?
Juror Safinski: I think so.
* * * * * *
Mr. Lipcon: ... Have any of you ever been a defendant in a court case? In other words, has anybody sued you for one reason or another? When I say "you" I mean you or your immediate family.
Juror Safinski: As a doctor, my husband has been sued.
Mr. Lipcon: Okay. Would that influence you in listening to a case where you see a man sue for his injuries.
Juror Safinski: Definitely.
Mr. Lipcon: It would definitely influence you?
Juror Safinski: Definitely.
Mr. Lipcon: You think that you would have a hard time?
Juror Safinski: We're not trying a doctor, but there's an injury.
The Court: Sorry, I didn't hear that.

*506 Juror Safinski: It's not against a doctor, but there is an injury involved and I don't know how impartial I could be.
Mr. Lipcon: We're going to claim that some of the care given here is no good. Do you think that would cause you to have difficulty with the case?
Juror Safinski: Definitely.
When counsel for RCCL voir dired Mrs. Safinski, he inquired of her previous answers:
Mr. Houck: Ms. Safinski, you mentioned that it might be difficult for you to put aside some things which involve people with back cases. Are you willing to agree to try as best you can to be fair and impartial in this case?
Juror Safinski: Yes.
Mr. Houck: And would you agree to follow the law as the judge instructs you?
Juror Safinski: Definitely.
Later, the trial court further probed Mrs. Safinski as follows:
The Court: You have stated that you felt that you might not be impartial?
Juror Safinski: Well, my husband is a physician. He's had the back operation that they were speaking of.
The Court: Well, you recognize that what happened to him is not what is here before us?
Juror Safinski: That's true.
The Court: You recognize that this would be a presentation to people who would have to make a determination of the facts as they have them, as received through evidence that is here in this courtroom and in this courtroom only? It doesn't apply to the outside world. It doesn't apply to any of your friends or your experiences. It doesn't apply to anything except what happened to the parties who are in this courtroom. You understand that?
Juror Safinski: (Juror nods head in the affirmative).
The Court: Do you feel that you can be fair and impartial as to what happened to other people?
Juror Safinski: Yes.
The Court: Do you feel that you can refrain from making any determination until you have heard all the facts and all of the evidence and all the argument of counsel?
Juror Safinski: Yes.
Thereafter, counsel for Tizon moved to strike Mrs. Safinski for cause. The trial court denied the motion and Tizon was forced to use a peremptory challenge to remove Mrs. Safinski. When Tizon exhausted all of his peremptory challenges, he requested an additional peremptory challenge to remove another juror. The trial court denied that request. It is reversible error to deny a challenge for cause, thereby forcing a party to "waste" a peremptory challenge to remove an objectionable juror and forcing him to keep another objectionable juror on the panel because all of the challenges were used. Diaz v. State, 608 So.2d 888, 890 (Fla. 3d DCA 1992), rev. denied 613 So.2d 9 (Fla. 1993). See e.g. Penn v. State, 574 So.2d 1079, 1081 (Fla. 1991).
At the outset, we note that the Supreme Court in Singer v. State, 109 So.2d 7, 23-24 (Fla. 1959) has held that:
[I]f there is a basis for any reasonable doubt as to any juror's possessing that state of mind which will enable him to render an impartial verdict based solely on the evidence submitted and the law announced at the trial [,] he should be excused on motion of a party, or by [the] court on its own motion.
This court has followed the Singer standard and said that where a juror initially demonstrates a predilection in a case which in the juror's mind would prevent him or her from impartially reaching a verdict, a subsequent change in that opinion, arrived at after further questioning by the parties' attorneys or the judge, is properly viewed with some skepticism. Club West v. Tropigas of Florida, Inc., 514 So.2d 426, 427 (Fla. 3d DCA 1987), rev. denied 523 So.2d 579 (Fla. 1988). "The test [for juror competency] to be applied by the court is whether the prospective juror is capable of removing the opinion, bias or prejudice from his or her mind in deciding the case based solely on the evidence adduced at trial." Id. at 427; Hamilton v. State, 547 So.2d 630, 633 (Fla. 1989) (citing Lusk v. State, 446 So.2d 1038, 1041 (Fla.) cert. denied 469 U.S. 873, 105 S.Ct. 229, 83 L.Ed.2d 158 (1984)). Further, a juror's assurance that he or she is able to do so is not determinative. Club West, 514 So.2d at 427.
*507 In response to questions from Tizon's counsel, Mrs. Safinski clearly indicated that she would be influenced by the fact that her husband and others she knew had successfully recovered from the same spinal surgery that Tizon had undergone. She also indicated that although this was not a medical malpractice case, she would be influenced in this case because her husband is a physician who has been sued. Although she later indicated both to counsel for RCCL and the judge that she would try to be as fair and impartial in this case as possible and to follow the law as the court instructed her, these statements were certainly suspect in light of her earlier testimony to Tizon's counsel. When any reasonable doubt exists as to whether a juror possesses the state of mind necessary to render an impartial verdict based solely on the evidence submitted and the law announced at trial, he should be excused. Singer, 109 So.2d 7; Levy v. Hawks Cay, Inc., 543 So.2d 1299 (Fla. 3d DCA), rev. denied 553 So.2d 1165 (Fla. 1989). Mrs. Safinski's conflicting statements certainly created such a reasonable doubt and it was an abuse of discretion not to excuse her for cause.
We therefore reverse and remand for a new trial based on the rule of law stated in Diaz. We find that the remaining issues on appeal either have no merit or need not be addressed in light of this decision.