778 So.2d 1005 (2000)
John GOOTEE, etc., Appellant,
v.
Sidney CLEVINGER, M.D., et al., Appellees.
No. 5D00-218.
District Court of Appeal of Florida, Fifth District.
December 1, 2000.
Rehearing Denied March 2, 2001.
Stephen J. Knox, of Morgan, Colling & Gilbert, P.A., Orlando, for Appellant.
*1006 Jennings L. Hurt, III and Mary Gannon-McMurry, of Rissman, Weisberg, Barrett, Hurt, Donahue & McLain, P.A., Orlando, for Appellees.
GRIFFIN, J.
This is an appeal from a final judgment entered after a jury verdict in favor of the defendants below. Because the lower court erred in failing to excuse two jurors for cause, we reverse.
The appellant, John Gootee [ "Gootee"], as personal representative of the Estate of Leonie Gootee (his wife), was the plaintiff below in a wrongful death claim based on the alleged medical malpractice of the appellee, Sidney Clevinger, M.D. [ "Clevinger"]. The complaint alleged that Clevinger failed to diagnose and treat Leonie Gootee's heart disease after an electrocardiogram revealed an abnormality.
At trial, during voir dire, a potential juror, Davis, made the following statements:
DAVIS: My daughter's in-laws are patients of Dr. Clevinger's.
COURT: Your daughter's in-laws are. Okay. Do you know him socially?
DAVIS: His father was my mailman.
COURT: Okay. Anything else?
DAVIS: No.
COURT: Okay. So if you passed him on the street would you know him?
DAVIS: Yes.
COURT: You would say hello?
DAVIS: Well, yes, because he was in our building. We're Ocala Eye Surgeons on Magnolia. His office was upstairs and ours was down.
DAVIS: He's also the doctor for my daughter's in-laws and he's been very good to them in working with my daughter and her husband doing a lot to help them. So I reallyI've got to be honest about this. I would try to be impartial but, in all fairness to both sides, I'm not sure that my sympathies wouldn't be with Dr. Clevinger even though I would notyou know, I would feel bad about it. I just wish I could say a hundred percent that I would be strictly impartial but I really can't say that.
KNOX: [Counsel for Gootee] You have a doubt about whether or not you could be fair to the parties in this case given your knowledge of Dr. Clevinger?
DAVIS: I hope I wouldn't but I'm not going to tell you that positively. I'm sure it's going to be an emotional thing. I mean it's very difficult in a case like this. Your sympathies go with both parties.
KNOX: But because of your relationship with Dr. Clevinger it would make it
DAVIS: It would make it more difficult, definitely, yes.
KNOX: What you're saying is you have a concern about whether you could be fair knowing that relationship?
DAVIS: Yes.
HURT: [Counsel for Clevinger] You feel that you can be fair and equal to both sides, now that you've heard lawyers talking for this amount of time?
DAVIS: Since I am in the position that I am in, I would do everything I could to be fair to both sides.
HURT: I think that's
COURT: What does that mean, everything you can to be fair? Could you be fair?
DAVIS: Yes, I would try to be fair.
COURT: Not try, can you be?
DAVIS: I hope I can. How can anybody tell you positively when we hear everything right now what we're going to be able to do?
HURT: Well, he's not asking you the result.
COURT: You're not telling us what you're going to do. You must be able to say I can be fair, not I'll try. I can tell you right now I'm going to be fair. *1007 But you've got to be able to tell me the same thing.
DAVIS: Most people tell me I'm fair.
COURT: Well, what's your answer, then, to my question?
DAVIS: Yes, I can be fair whether I like it or not.
COURT: They start out at zero. How about in the back there? Nothing to nothing?
DAVIS: Nothing to nothing.
During voir dire, another potential juror, Primm, made the following statements:
PRIMM: Yes. I have no connection with Munroe but I do not care to be this emotionally involved in this type of decision.
KNOX: Okay. Tell me more about what you mean by that.
PRIMM: I guess I'm pretty sensitive. That's all.
KNOX: Okay. Well, do you think, given the sensitive type of personality that you have, that if you had to, you had to sit down and listen to the evidence in this case, do you think that you'd be able to make a decision?
PRIMM: I would be able to make a decision I expect but I may be emotionally sick over both sides of the issue.
KNOX: That's my next question. Do you think this concern, this emotionalism that you have would benefit one party versus the other?
PRIMM: It may benefit one party versus the other.
KNOX: Which party would that be? Would that be Dr. Clevinger? I mean some people feel like these type of cases are crazy and shouldn't be brought. I don't know whatwhen you say that, I don't knowso let me know.
PRIMM: Must I answer that question?
COURT: You can come up here if you'd like and just tell me up here.
PRIMM: Excuse me?
KNOX: You can come up here.
COURT: Do you want to come up here and tell us rather than tell everyone?
PRIMM: I would probably have a predilection toward the doctor.
COURT: Okay.
KNOX: Meaning you would tend to favor the doctor?
PRIMM: Yes.
KNOX: Okay. Well, that's the kind of discussion that we want to have here. We want everyone to be fair and candid and I thank you very much for letting us know that.
COURT: If any of you feel for one side or the other that you can't beyou can't start off even, then he needs to know that and the other attorneys need to know that. That's what all these questions amount to in the final analysis.
KNOX: So I guess another way to put it would be do you think you have a reasonable doubt about whether or not you could be fair in this case given your predilection for the doctor? Do you have a doubt about that?
PRIMM: My emotional health perhaps would suffer. That is all. Now, if you don't mind damaging my emotional health, that's okay with me.
KNOX: Well, let's say for a moment, since you're here in the courtroom and the prospects are that you may end up on this jury, you've asked me a question how will I do it. If you are asked by the judge based on all of the evidence in the case to evaluate those issues, that is, well, what is the loss of the companionship of his wife, what is the appropriate measure of damages for that, for pain and suffering for losing your wife, if you were asked to do that would you be able to?
PRIMM: I don't think I would be able to put a dollar amount on that.
KNOX: Even if the judge instructed you to do that?

*1008 PRIMM: I would have to have a lot more education and many more convictions about the worth of a human life.
KNOX: And those are probably not the kind of things we're going to be able to provide you with during the trial.
PRIMM: Yeah.
HURT: Mrs. Primm, I want to talk to you about that subject. You said a few things earlier and I took some notes. You indicated that this would be a difficult case for you to serve as a juror on and I don't know that that's a sentiment that's not shared by some of the others on here.
PRIMM: I have
HURT: I'm sorry. Let me just kind of talk for a second and then you can tell me what you want. It's difficult dealing with wrongful death. I mean the fact you're going to have testimony from Mr. Gootee about his life experiences with his wife and the fact that she's no longer with him and, you know, you might very well feel emotional over that, as I might feel emotional. Dr. Clevinger, trust me, would feel emotional. That's just because you're a human being. We all are. But what the judge wants to know is whether you can be fair in analyzing the evidence in this case in reaching a decision. It isn't going to necessarily be easy to reach the decision but can you be fair in working toward making that decision along with the other jurors that are going to serve with you if you're one of the six. That's what we're trying to find out.
PRIMM: Since I made that remark at the very beginning I have been considering that everybody probably is going through exactly what I said was going to be my experience. I am no different than anyone else.
HURT: You're all fish out of water. I've done this so many times and you all come into the courtroom and you're a little bit weary of lawyers. You've got a judge there. You don't know it's not your element. You don't know what to do and what to say and we all start asking you these incredibly personal questions and you don't know what to say and you're a little bit uncomfortable. But now that we've been doing it for a while hopefully you've become a little bit more comfortable with us and I think what you told us earlier this morning was an honest response but I don't know that that makes you not suitable to be a fair juror in this case. I think you'd be a very fair juror.
PRIMM: I told you the truth but I think my truth was representative of all those people here and, therefore, I am not any different or any better or any more sensitive than anybody else.
COURT: Ma'am, can you be fair to both sides?
PRIMM: Yes.
COURT: They start out the score nothing to nothing?
PRIMM: Yes.
COURT: They start out at zero.
During trial there were many references to another prominent local doctor, Dr. Elliott, who had been sued for malpractice in a case where the law firm representing Mr. Gootee had represented the plaintiff. Mr. Gootee's two expert witnesses, Kahn and Charash, both had testified against Dr. Elliott in that case. Plaintiff had moved in limine to prevent Dr. Clevinger's use of Dr. Elliott's name out of concern that it would prejudice the jury. The trial judge decided not to grant the motion and Dr. Elliot's name was repeatedly used during trial, often over Gootee's objection, but sometimes without objection. The jury returned a verdict in favor of Clevinger.
On appeal, Gootee argues that the trial court erred in refusing to strike Davis and Primm for cause. Gootee cites the portions of voir dire set forth above and claims that both jurors should have been removed for cause. Because they were *1009 not, Gootee had to use his peremptory challenges to remove them and was prejudiced because he was unable to remove another juror, Lunz.
Clevinger's first response to this argument is that the issue is not preserved for appeal, relying on Milstein v. Mutual Security Life Insurance Co., 705 So.2d 639 (Fla. 3d DCA 1998). There, Milstein had challenged a juror for cause, but the trial court refused to strike the juror. Milstein then used a peremptory challenge against the challenged juror. After exhausting his remaining peremptory challenges, Milstein requested an additional peremptory challenge to strike a specifically named juror. The trial court denied the request and that juror sat on the jury. Milstein did not renew his objection prior to the time that the jury was sworn. Id. at 640. Relying on Joiner v. State, 618 So.2d 174 (Fla. 1993), the Third District held: "Joiner thus mandates that the claimed error be called to the trial court's attention once more prior to the swearing of the jury, so that the court will be made aware that the objecting party is insisting on the objection, and so that the court will have a last clear chance to take corrective action if needed." 705 So.2d at 640. The court concluded that "it was necessary for plaintiff to renew the objection prior to the time that the jury was sworn." Id.
In this case, the transcript reveals that after the trial court denied the "for cause" challenge against Davis, Gootee's attorney stated:
I'm not sure if I need to do this before we get to that point (determining the alternate) but I just need to put a request on the record that I request an additional peremptory challenge because I believe the Court erred in failing to strike Miss Davis for cause and failing to strike Miss Primm for cause, so I request an additional challenge because I am out of challenges at this basis. If the Court granted me an additional challenge I would use the challenge to strike juror Number 1, Mr. Lunz. So I am requesting an additional challenge of the Court at this time.
The request was denied and within a matter of a couple of minutes (three pages later in the transcript), the jury was sworn. The issue is whether Gootee's counsel adequately preserved the error in denying the challenge to Davis and Prim for cause.
We find this error was adequately preserved. In Joiner, 618 So.2d 174, the supreme court held that because Joiner "affirmatively accepted the jury immediately prior to its being sworn without reservation of his earlier-made objection," the issue was not preserved. Id. The supreme court stated:
We agree with the district court that counsel's action in accepting the jury led to a reasonable assumption that he had abandoned, for whatever reason, his earlier objection. It is reasonable to conclude that events occurring subsequent to his objection caused him to be satisfied with the jury about to be sworn.
Id.
In this case, because of the specific objection communicated to the judge and the proximity of this objection to the swearing of the jury, there is no question that the judge understood and rejected Gootee's consistently maintained position that the judge had erred. It would have been futile for the lawyer to repeat what he had just told the judge.
The next question is whether Davis and Primm should have been removed for cause. The excerpts from voir dire set forth above show that Davis was doubtful whether she would be able to be fair. The best she was able to do, even after insistent pressing from the trial judge was: "Yes, I can be fair whether I like it or not." Primm was candid in expressing her inability to perform a juror's responsibility.
It is reversible error to force a party to use peremptory challenges on *1010 persons who should have been excused for cause, provided the party subsequently exhausts all of his or her peremptory challenges and an additional challenge is sought and denied. Hill v. State, 477 So.2d 553, 556 (Fla.1985). See also Pacot v. Wheeler, 758 So.2d 1141, 1142 (Fla. 4th DCA 2000); Straw v. Associated Doctors Health and Life, 728 So.2d 354, 355 (Fla. 5th DCA 1999); Massad v. State, 703 So.2d 1134 (Fla. 5th DCA 1997); Tizon v. Royal Caribbean Cruise Line, 645 So.2d 504, 505 (Fla. 3d DCA 1994); Jenkins v. Humana, Inc., 553 So.2d 201 (Fla. 5th DCA 1989); Club West, Inc. v. Tropigas, Inc., 514 So.2d 426 (Fla. 3d DCA 1987).
When any reasonable doubt exists as to whether a juror possesses the state of mind necessary to render an impartial verdict based solely on the evidence submitted and the law announced at trial, he should be excused.
Tizon, 645 So.2d at 507.
Upon examination of the voir dire, even our most deferential view of the statements of Davis and Primm leaves substantial doubt about whether these two jurors possessed the state of mind necessary to render an impartial verdict based solely on the evidence submitted and the law announced at trial. Accordingly, we reverse and remand for a new trial.[1]
REVERSED and REMANDED.
JOHNSON, C.T., Associate Judge, concurs.
HARRIS, J., dissents, with opinion.
HARRIS, J., dissenting.
I agree with plaintiff, and the majority, that the trial court erred in not excusing at least one of the challenged jurors for cause and that plaintiff exhausted his peremptory challenges to remove that juror and requested another peremptory challenge so that he could remove an additional and specified juror who ultimately served on the jury from the panel. Plaintiff has thus both preserved the error and established it. But is that enough to justify the reversal of a jury verdict which is supported by the record and which was returned by a jury whose fairness is not challenged by this record? Plaintiff has not shown any prejudice from the court's error unless we hold that the loss of a peremptory challenge due to a judicial mistake is itself "harmful" as a matter of law. Although I admit it is not crystal clear, I believe Florida law requires a showing of prejudice.
The right to a jury trial is of constitutional significance. Here, that right was given to both parties and there is no indication that any one of the jurors who decided the verdict was biased.[1] When a jury of six impartial jurors return a verdict *1011 which is fully supported by the record, it should not be set aside lightly.
The peremptory challenge, on the other hand, not only is not of constitutional magnitude, it is a mere shadow of its original self. We have progressed to the point that we will no longer permit the peremptory challenge to be based on racial or gender stereotypical prejudices so it no longer has its initial luster. Sure, it can still be used to eliminate gays, the obese, the poor (or the rich) and the uneducated (or the over-educated) from the jury. And it can be used to get rid of the red haired, the no haired and anyone for whom counsel has a gut feeling will not be sympathetic to his cause. Because there may be some validity to gut feelings, the peremptory challenge retains some value but it is of limited value. It simply does not come close to offsetting the dignity and respect that should be accorded an impartial jury verdict.
Had plaintiff exhausted his peremptory challenges in striking those who failed his gut reaction test so that a juror who, because of judicial error, was not removed "for cause" and was permitted to serve on the jury, a reversal would be mandated because an "objectionable juror" was permitted to serve. Thus, while it is true that plaintiff was required to use his discretionary challenges to offset a judicial error and prevent the prejudice that would necessarily have followed, the bottom line is that a biased juror did not serve on the jury and therefore no prejudice resulted because of an objectionable juror. Thus the question remains, is the failure to get one's full complement of peremptory challenges itself so prejudicial that a new trial must always be granted? If that is the law, should it not also be always reversible error if a party gets too many challenges? Suppose the judge had properly decided the "for cause" challenge but had given plaintiff a compensating extra peremptory challenge "to be safe" and the jury returned a plaintiffs verdict. If defendant appeals the unfairness of plaintiffs getting an extra challenge, a greater number than the rule permits and more than was afforded to defendant, must we also set aside the verdict?
The purpose of peremptory challenges, first and foremost, it to assure an impartial jury as guaranteed by the constitution. If, as in this case, there is no legitimate question as to the sitting jury's impartiality, the law should be "no harm, no foul." In the grand scheme of things, what does Florida law value more: is it upholding a fair and impartial verdict or is it assuring an unabridged right to an arbitrary number of (now limited) discretionary challenges?
The United States Supreme Court[2] considered the same issue but in the context of a capital criminal appeal in which the claimant's right to an impartial jury takes on even greater significance:
Petitioner was undoubtedly required to exercise a peremptory challenge to cure the trial court's error. But we reject the notion that the loss of a peremptory challenge constitutes the violation of the constitutional right to an impartial jury. We have long recognized that peremptory challenges are not of constitutional dimension. [Citations omitted]. They are a means to achieve the end of an impartial jury. So long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean that the Sixth Amendment was violated. [Citations omitted]. We conclude that no violation of petitioner's right to an impartial jury occurred.
In this case, plaintiff exercised his available peremptory challenge in accordance with his gut feelings. Even though Plaintiff urged that he would have excused one more juror had he been given the opportunity, this unexcused juror, whose fairness if not challenged by the record, and the five other jurors with whom plaintiff felt *1012 confident agreed to a defense verdict. This indicates an unsupportable case rather than a prejudiced result.
The best plaintiff can do in this case is to urge that had he been given the opportunity he would have stricken one of the sitting jurors so that a "different jury" would have considered the issue. This position was rejected in Ross. The issue should not be whether plaintiff would have received a different jury; the issue should be and, in my view, is whether he received an impartial jury in this case. Any other consideration places form over reason.
Admittedly there is some confusion as to whether Florida law requires that actual prejudice be shown under the facts of this case. The earlier supreme court decisions on this point, and the more recent, seem to be in harmony with Ross. Intervening opinions, however, cast some doubt on this point.
In Rollins v. State, 148 So.2d 274, 276 (Fla.1963), overruled in part on other grounds, Poole v. State, 194 So.2d 903 (Fla.1967), the court refused to reverse a conviction based on an erroneous ruling on a challenge for cause because "Rollins has not shown that he was thereby required to accept an objectionable or unqualified juror after he exhausted his peremptory challenges." The court then indicated that an "objectionable" juror is one that is legally objectionable or unqualified to serve:
As noted above, appellant did not challenge Braxton, the last juror to be selected after he exhausted his quiver of peremptory challenges. On oral argument Rollins' counsel stated that he would have excused Braxton peremptorily because he was a native of Alabama and had a limited education. In this jurisdiction, neither fact renders a venireman legally objectionable or unqualified to serve.[3]
In Hamilton v. State, 547 So.2d 630 (Fla.1989), the trial court refused to excuse a clearly biased juror for cause. Defendant did not initially excuse the juror even though at the time of the "for cause" challenge he had remaining peremptory challenges. At the conclusion of the voir dire, after he had exhausted his peremptory challenges, Hamilton requested an additional challenge so that he could backstrike the biased juror. The trial judge refused, the biased juror sat on the convicting jury and the supreme court reversed stating: "It is clear that the juror did not possess the requisite impartial state of mind necessary to render a fair verdict and thus should have been dismissed from the jury pool." Here, Hamilton met the requirement of showing that the exhaustion of his peremptory challenges and the court's erroneous ruling on the "for cause" challenge meant that an objectionable juror was permitted to serve. This is the classic situation in which the reversal of a verdict based on judicial error in failing to disqualify a biased jury is justified, not merely because an error was committed and preserved but because the resulting jury could not be found to be impartial. This is a proper Ross application.
However, in Trotter v. State, 576 So.2d 691 (Fla.1990), the supreme court, even though it applied the same requirements for preservation of the error, held the error, if preserved, to be automatically reversible:
By this [to show reversible error] we mean the following. Where a defendant seeks reversal based on a claim that he was forced to exhaust his peremptory challenges, he initially must identify a specific juror whom he otherwise would have struck peremptorily. The juror must be an individual who actually sat on the jury and whom the defendant either challenged for cause or attempted to challenge peremptorily or otherwise *1013 objected to after his peremptory challenges had been exhausted. (Emphasis added.)[4]
This quote indicates that the mere indication of a desire to strike a specific juror after the court's erroneous ruling on a "for cause" challenge caused the exhaustion of the complaining party's peremptory challenges is sufficient to warrant reversal if that specified juror actually sits on the jury.[5] But in Farina v. State, 679 So.2d 1151, 1154 (Fla.1996), receded from on other grounds, Franqui v. State, 699 So.2d 1312 (Fla.1997), the supreme court returned to the pre-Trotter "objectionable juror" standard by holding in a case in which the error had been properly preserved:
In Issue 2, Farina argues that he was forced to use peremptory challenges on a number of prospective jurors who should have been excused for cause. As a result, he argues, objectionable jurors were seated. This court has held that "[t]o show reversible error, a defendant must show that all peremptories had been exhausted and that an objectionable juror had to be accepted." [Citing Trotter.] Farina used sixteen peremptory challenges, including seven that he claims were used on prospective jurors who should have been excused for cause... Although Farina sought additional peremptory challenges to excuse certain jurors, we have already found that the jurors Farina complains of in Issue 1 were acceptable. Thus, there were no objectionable jurors on his panel, so it does not matter that he was forced to exercise peremptory challenges as he argues in Issue 2.
In the present case, there was no effort to show that the juror seated because plaintiff had exhausted his peremptory challenges was "objectionable" under the Farina, Rollins, or Hamilton standard. Whether the supreme court ultimately follows the Trotter or the Rollins reasoning will determine whether a jury verdict may be set aside only if a sitting juror is determined to have been "objectionable" or if it may be set aside merely because the complaining party properly preserved the trial court's error relating to the "for cause" challenge. Rollins requires an error which affects the fairness of the verdict; Trotter requires only that there have been an error in ruling on the "for cause"challenge and that (1) the peremptory challenges are exhausted to cure the error, (2) an additional challenge is requested (and denied), (3) for the purpose of challenging a specified juror who ultimately serves on the jury. I submit that although (1), (2), and (3) are essential in order to preserve the error (for without them there would clearly be no harm associated with the court's error), such preservation factors themselves fail to establish harm. Trotter, in effect, grants a reversal of even a fair verdict in order to reward a party for properly following the procedure to preserve the error. Rollins, Hamilton and Farina go further and ask, "Now that you have preserved the error, how have you been harmed?" Only by asking this question will we subject this procedural error, as we do even constitutional errors, to a harmless error analysis.
Because I believe the majority opinion herein conflicts with Farina, I would at least certify the issue to the supreme court.
NOTES
[1] The dissent suggests that Gootee must not only demonstrate error but must also demonstrate harm above and beyond the deprivation of the two peremptory challenges that had to be used on the jurors that should have been dismissed for cause. This does not appear to be the controlling law. Besides, it is difficult to imagine how "harm" could be proved by the appellant except in the rare case where the last peremptory challenge would have been used on someone unsuitable enough to have been challenged for cause. If a demonstration of such harm were required, however, we believe this burden is met by the fact that the wife of juror, Lunz, whom Gootee sought an additional peremptory challenge to remove from the panel, was a patient of Dr. Elliott. Although we cannot say Lunz should have been removed for cause, the utility of the lost peremptory challenge to appellant is not speculative.
[1] The wife of the juror who would have been challenged had plaintiff had available another peremptory challenge was a patient of another doctor in the community who was a nonparty, non-witness to this cause. There is simply no indication in this record that the fact that plaintiff's expert had once testified against such other doctor in another case would have in any way prejudiced this juror in deciding whether the defendant doctor in this case was negligent. In a smaller community with limited medical specialists, only two such specialist in this community, if such a tenuous relationship can make a potential juror "legally objectionable," it will be difficult to ever select a jury.
[2] Ross v. Oklahoma, 487 U.S. 81, 88, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988).
[3] Even though this challenge was not made at trial but rather on oral argument, the 1963 supreme court considered the issue.
[4] See also Hill v. State, 477 So.2d 553 (Fla. 1985), which was decided before Ross and is similar to Trotter.
[5] Indeed, this is how Trotter was interpreted in Diaz v. State, 608 So.2d 888 (Fla. 3d DCA 1992).