# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D18-1338
_____

MOVITA SANCHEZ,

    Appellant,

    v.

GEICO INDEMNITY COMPANY,

    Appellee.

_____


On appeal from the Circuit Court for Walton County.
Jeffrey E. Lewis, Judge.

July 22, 2019


JAY, J.

We have for review the trial court's order granting GEICO Indemnity Company's motion for new trial. Relying on *Matarranz v. State*, 133 So. 3d 473 (Fla. 2013), and *Singer v. State*, 109 So. 2d 7 (Fla. 1959), the trial court concluded it applied the incorrect standard in denying GEICO's motion to remove a juror for cause. For the reasons that follow, we affirm.

## I.

Movita Sanchez sued GEICO for damages caused by a motor vehicle accident that occurred on November 19, 2012. The issues of negligence and causation were settled between the parties, but a jury trial was held to determine the amount of damages.

At the stage of jury selection, it was revealed that the venire contained two prospective jurors—numbers 13 and 17—each of whom bore the surname of "Johnson." During voir dire, counsel for plaintiff Sanchez, Mr. Wesley, asked the members of the venire if any of them had brought a lawsuit against their own insurance company. The following exchange took place between Mr. Wesley and juror 13:

MR. WESLEY: Anyone else ever had to bring a lawsuit against their own insurance company?

Mr. Johnson?

[JUROR 13]: Yes.

MR. WESLEY: Tell me about that, sir.

[JUROR 13]: This was in the 80s. I don't remember much of it. I was rear ended. I filed a claim.

MR. WESLEY: Okay. Did you bring a claim against your insurance company, or did you bring [a] claim against the person who rear ended you, or do you remember?

[JUROR 13]: My insurance company.

MR. WESLEY: Okay. Under an uninsured motorist coverage?

[JUROR 13]: The driver was insured.

MR. WESLEY: Regardless of who the claim may have been against, were you satisfied with that process?

[JUROR 13]: Um . . .

MR. WESLEY: Pregnant pause. It sounds like you may not have been – exactly happy with the process or totally satisfied with the result. Is that fair?

[JUROR 13]: Well I'm still suffering from the injuries so –

2

MR. WESLEY: You still have injuries or symptoms that were, are related to that accident?

[JUROR 13]: Right.

MR. WESLEY: Do you still receive treatment?

[JUROR 13]: No.

MR. WESLEY: Just something you deal with?

[JUROR 13]: Yes.

MR. WESLEY: Along the same lines of the question I asked – do you believe like you were made whole or that you received everything that you were owed as a result of that accident?

[JUROR 13]: No.

MR. WESLEY: No? Thank you, Mr. Johnson.

Later on, juror 13 responded to Mr. Wesley's additional questions as follows:

MR. WESLEY: Anybody else in the panel – anybody else have concerns about starting everybody off even? Does anybody feel like they are not able to do [sic]? That they are already leaning one way or the other – Mr. Johnson?

[JUROR 13]: I am leaning towards the plaintiff.

MR. WESLEY: Okay. What gives you that lean?

[JUROR 13]: I have a fiancée that is involved in a personal injury case at this time with Geico.

MR. WESLEY: Okay. Is that a case where Geico is the uninsured motorist carrier, meaning her insurance company or is that the other driver?

[JUROR 13]: It is her insurance company.

MR. WESLEY: Your fiancée is in a case with Geico currently?

[JUROR 13]: Yes.

MR. WESLEY: **Does something about that case cause you not to be fair and impartial here?**

[JUROR 13]: **That's correct.**

MR. WESLEY: **Again, not having heard any evidence so far, do you believe going into the case, you would already be somewhat leaning on this side as opposed to on Geico?**

[JUROR 13]: **Yes.**

MR. WESLEY: All right. Thank you, sir. I appreciate that.

(Emphasis added.)

The parties' attorneys then voiced their challenges for cause. Mr. Wesley was successful in challenging for cause juror 17—the other Mr. Johnson—because during voir dire, and obverse to juror 13's sentiment, juror 17 expressed a bias in favor of GEICO. Counsel for GEICO, however, did not seek to have juror 13 removed for cause due to his expressed bias against GEICO.

Counsel next exercised their peremptory strikes. GEICO's attorney, Mr. Martin, utilized all of his peremptory strikes. The trial court then listed the jurors to be empaneled: "This would be 5, 6, 7, 8, 9, **13**, and 15 would be our alternate." Both sides agreed to the jury. The trial court did not, however, place the jury under oath; instead, it called a recess for lunch.

Apparently, during the lunch recess, something or someone jogged Mr. Martin's memory that there were two Messrs. Johnson in the venire. He recognized the potentially dire consequences to his defense of his having conflated the two Johnsons—jurors 13 and 17—which would result in juror 13 being seated on the jury. Accordingly, upon his return to the courtroom and as soon as the

4

judge inquired if there was anything that needed to be brought up before the jury was brought back in, Mr. Martin responded:

> MR. MARTIN: Yes, Your Honor. And I preface this by apologizing to the Court and to plaintiff's counsel, but it was brought to my attention over the lunch hour that I made a mistake during the jury selection process. I got the two jurors, Johnson, Juror Number 13 . . . and Juror Number 17, Johnson mixed up in my head.

> **I should have moved to strike . . . Juror Number 13, for cause**. The reason being that . . . Juror Number 13, stated that he had a lawsuit against his own insurance company in the 1980s. He was still suffering from that. **He was leaning towards the plaintiff**. He was not satisfied with the result of his prior claim, and his current fiancée is currently involved in a personal injury lawsuit against Geico.

> The Juror Number 17 . . . was struck for cause. **And I conflated the two of them in my mind** and didn't think to move for cause for [Juror Number 13]. He is currently seated at Juror Number 6 in our panel. For that reason, I'm compelled, I believe, **to move to strike Juror Number 13 . . . for cause** and proceed with Juror Number 15 . . . who's currently the alternate, as the sixth juror on the panel.

> And again, I apologize for my error, but I – I feel like I have to make that motion at this point.

(Emphasis added.)

Mr. Wesley objected to Mr. Martin's challenge for cause, claiming that juror 13's answers did not constitute sufficient bias to justify the challenge. He also claimed he would have used his peremptory strikes differently had juror 13 been removed for cause.

Mr. Martin countered by pointing out that Mr. Wesley had used his last peremptory strike before Mr. Martin had exhausted his own, and he (Mr. Martin) could have "back struck Juror

5

Number 13 . . . with [a] peremptory." Mr. Martin explained that because Mr. Wesley's peremptory strikes had been exhausted, "Mr. Wesley would not have been able to make any additional changes to the panel" if Mr. Martin had back struck juror 13. He therefore urged that the only harm presented was the risk of proceeding with no alternate juror. Mr. Martin then repeated his request that juror 13 be removed from the jury for cause and the alternate juror be seated as a regular juror on the panel.

Acknowledging that his own notes of juror 13's answers indicated "some potential bias" on the juror's part, the trial judge determined to question him on his ability to be fair. The judge noted for the record that the defense did not possess anymore peremptory strikes, and, in doing so, he made his position clear: "**I'm not going to back strike [juror 13] unless it's clear that he should be stricken for cause**."

Accordingly, juror 13 was called into the courtroom, and the trial court conducted an additional inquiry into the circumstances of the juror's fiancée's involvement with GEICO. Juror 13 reiterated that his fiancée had filed a claim with GEICO following an automobile accident in which she was not at fault. The driver who caused the accident was also insured by GEICO. The court then conducted the following colloquy:

> THE COURT: . . . And do you believe that – based on that, that have [sic] any bearing on your ability to be fair and impartial in this case?
>
> [JUROR 13]: Well, it's – it's the evidence at the end – at the end of the day. **If the evidence [is] 50/50, I probably lean towards the plaintiff.**
>
> THE COURT: Uh-huh.
>
> [JUROR 13]: Because I – I hear my fiancée, you know, discussing her case with me like every – every other day.
>
> . . . .

6

THE COURT: Well, like I said, the – the only question that I had was just whether or not you can place that aside and fairly consider the issues as relates to the parties here and render a verdict on the evidence here and not on the basis of what may be taking place with regard to your fiancée.

And so that's the question I needed to ask.

[JUROR 13]: **I would like to think I could, yes.**

THE COURT: Okay. You believe you could?

[JUROR 13]: **But, you know, I just had to mention that, so** . . .

THE COURT: How long ago was the accident?

[JUROR 13]: Two years ago.

THE COURT: Okay. So it's been some time.

[JUROR 13]: Yes.

THE COURT: She's had a fair amount of – of interaction, I guess, with . . .

[JUROR 13]: Yes. It's ongoing presently.

THE COURT: Okay. But you – do you feel like one side starts ahead of the other, or do you believe that both start on even ground and you would require – one side or the other, you would have to be persuaded equally before you could reach a verdict and, you know, the burden is on the plaintiff?

[JUROR 13]: My – my decision is not made going, you know – it's not already made, my decision. I have to hear both sides. **But if it comes to 50/50, you know, human nature may take over**.

THE COURT: Okay. 50/50, though, if – if a tie, you're not persuaded, would you be able to render a verdict for

7

the defense if it – if they're – if you're not persuaded that the plaintiff should prevail? Would you be able to do that?

[JUROR 13]: I think I could be fair. To be honest with you, I think I could be fair in this situation.

(Emphasis added.)

Based on juror 13's responses, the trial court denied GEICO's "strike for cause." For the record, Mr. Martin voiced his objection on the basis that juror 13 "just said two different times that he's leaning towards the plaintiff," which, for Mr. Martin, did not evince "a clear indication that [juror 13 could] be fair and impartial," not just because of the situation with his fiancée and GEICO, but also in light of his personal and continuing dissatisfaction with his old accident and insurance claim. When the trial court pointed out that juror 13 had indicated "he would be 50/50," Mr. Martin observed:

But the 50/50 – if it's 50/50, the defense should prevail, Your Honor, as you know. . . . It was not the preponderance of the evidence. He said, if it's 50/50, he would be leaning towards the plaintiff. That tells us that he's not objective, he's not, you know, being – things aren't fair. He's saying, you know, if it's 50/50, he's going to favor the plaintiff . . . .

Nevertheless, the judge stood firm by his ruling that juror 13 "indicated he [could] be fair and follow the law," and, again, denied the challenge for cause.

Immediately thereafter, the jury was called back into the courtroom and was sworn.

At the outset of the second day of trial, Mr. Martin renewed his motion to strike juror 13 for cause. His basis for asking the court to reconsider its ruling was the Florida Supreme Court's decision in *Matarranz*, which he argued supported his position that juror 13's assurances of impartiality were insufficient to cure his earlier expression of bias, pointing to juror 13's evident equivocation. The trial court announced it would take the matter under advisement and review *Matarranz*. However, the trial was

concluded without a ruling from the court, and the jury returned a verdict for Movita Sanchez, awarding her damages totaling $2.5 million.

GEICO filed a motion for new trial. In the motion, GEICO alleged it was entitled to a new trial on the basis that juror 13 should have been struck from the jury, again citing to *Matarranz* to support its position that it was denied a fair trial.

## II.

## A.

The trial court entered a lengthy order, setting forth much of the dialog between GEICO's attorney, the court, and juror 13, as quoted above. Then, after a well-reasoned analysis of the applicable law, the trial court concluded that a new trial should be granted. We fully approve the trial court's analysis, which captures the relevant inquiry, and which we quote below:

> The first issue raised regarding juror bias goes to the heart of the jury process. In *Singer v. State*, 109 So. 2d 7 (Fla. 1959)[,] the Florida Supreme Court articulated the applicable rule to evaluate whether a trial court's denial of a challenge for cause constitutes reversible error:

>> [I]f there is any basis *for any reasonable doubt* as to any juror's possessing that state of mind which will enable him to render an impartial verdict based solely on the evidence submitted and the law announced at the trial, *he should be excused* on a motion of a party, or by the court on its own motion. (Emphasis added). *Singer*, 109 So. 2d at 23-24.

> In *Matarranz v. State*, 133 So. 3d 473 (Fla. 2013)[,] the Florida Supreme Court also stated,

>> "if error is to be committed, let it be in favor of the absolute impartiality and purity of the jurors["]—which is interpreted to mean that the mind of the proposed juror should not contain

9

any element of prejudice for or against either party in a cause to be tried before him." *Matarranz* at 484; *citations omitted.*

[In *Matarranz*,] [t]he Florida Supreme Court cited its opinion in *Johnson v. Reynolds*, 97 Fla. 591, 121 So. 793, 796 (1929), regarding attempts to rehabilitate a prospective juror who expresses some feeling of partiality during voi[r] dire, but who through skillful examination may subsequently profess his or her ability to put that bias aside. Specifically, the Court noted in *Reynolds*, the prospective juror initially expressed bias, but later conceded that he would be able to decide the case in accordance with the evidence presented. In *Reynolds*, the Florida Supreme Court held that this concession provided insufficient support to justify the court's conclusion that the juror was competent to serve. Specifically, the Court stated,

> we find it difficult, if not impossible, to understand the reasoning which leads to the conclusion that a person stands free of bias or prejudice who having voluntarily and emphatically asserted its existence in his mind, in the next moment under skillful questioning declares his freedom from its influence. By what sort of principle is it to be determined that the last statement of the man is better and more worthy of belief than the former? *Matarranz* at 485; quoting *Reynolds*.

In the instant case during voi[r] dire questioning by Plaintiff's counsel, Juror 13 affirmatively expressed a bias against Defendant which was not a mere philosophical feeling by Juror 13, but rather was one which was grounded in a matter **then pending** between Juror 13's fiancée and Defendant, Geico Indemnity Company. Having expressed his leaning toward Plaintiff's position, Juror 13 subsequently offered that he thought he could be fair. However, the juror also

expressed if it was 50/50, that he would lean to the Plaintiff's position.

At the outset, the court accepts the explanation of Defense counsel that his failure to request that Juror 13 be stricken for cause during voi[r] dire was made through mistake and inadvertence, and was not intentional so as to gain advantage. The record shows that there were two jurors with the same last name sitting on the same row. Both, among several others in the venire, expressed some feelings of bias either for or against Defendant, GEICO. One of those jurors expressed a bias **in favor** of Defendant (Juror 17) and that juror was removed for cause. The juror in question here (Juror 13) has the same last name [as] Juror 17 and expressed bias **against** Defendant.

Through mistake and inadvertence, defense failed to recognize the error and did not ask for a strike for cause until after the lunch recess. Jury selection had concluded before lunch and the venire released, but the jury had not been sworn. Defense counsel timely brought the issue to the court's attention before the jury was sworn. Based upon the initial response to questioning by Plaintiff's attorney and Juror 13's initial expression of bias based upon actual experience, the fact that there were two individuals on the same row with the same last name, one with favorable feelings to Defendant (cause granted) and one expressing unfavorable feelings toward Defendant who was not removed for cause, the[re] was the opportunity for confusion present.

The record demonstrates that Juror 13 did make his feeling of partiality against Defendant known during Plaintiff's voi[r] dire. After some inquiry, Plaintiff's counsel moved on to question other prospective jurors and asked no further questions to rehabilitate Juror 13 from his stated feelings. After Defendant's counsel brought this issue to the court's attention, the court inquired further of Juror 13 prior to swearing the jury. The answers by Juror 13 failed to affirmatively dispel the

11

juror's earlier responses. Juror 13 indicated he "thought" and "hoped" he could be fair leaving a reasonable doubt in his ability to do so. Accordingly, the court finds that it failed to apply the correct standard from *Singer* as affirmed in *Matarranz*. Therefore, this court finds that Defendant's Motion for [N]ew [T]rial should be granted. . . .

(Emphasis in original.)

We concur with the trial court's conclusion that juror 13's answers to the trial court's inquiries did nothing to rehabilitate him. He virtually pronounced his verdict in favor of Sanchez were he to ultimately find the evidence for both sides weighed evenly in the balance. Undoubtedly, his "emotions" and "passions" against GEICO would have informed his decision. *Matarranz*, 133 So. 3d at 484. As we expressed the overarching principle in *City of Live Oak v. Townsend*, 567 So. 2d 926 (Fla. 1st DCA 1990):

> The *sine qua non* of our system of trial by jury is that juries should be comprised of fair and impartial members who stand indifferent to the outcome of the proceeding. A prospective juror should be excused for cause if there is a reasonable doubt as to whether he or she will be able to render an impartial verdict based solely on the evidence and the law.

*Id.* at 928 (citing cases). Here, there was considerably more than a "reasonable doubt" as to juror 13's impartiality. As was true in *Townsend*, here, too, "[s]uch doubt was manifest and harmful" to GEICO. *Id.*

### B.

Were this the only issue before us in this appeal, we would not hesitate to affirm the trial court's decision to grant a new trial. *See Bulkmatic Transp. Co. v. Taylor*, 860 So. 2d 436, 444 (Fla. 1st DCA 2003) (observing that "[g]enerally, the granting of a new trial is within the sound discretion of the trial court, which is reversible only upon a showing of an abuse of discretion"). Ordinarily, "[t]he question of the competency of a challenged juror is 'one of mixed law and fact to be determined by the trial judge in his [or her]

12

discretion [and that] decision will not be disturbed unless the error is manifest.'" *Matarranz*, 133 So. 3d at 484 (quoting *Singer*, 109 So. 2d at 22); *see also Carratelli v. State*, 961 So. 2d 312, 319 (Fla. 2007) (noting that appellate courts review "the trial court's discretionary decision for manifest error").

But Sanchez argues that GEICO's objection to the empaneling of juror 13 was not preserved and, thus, could not support the trial court's decision to grant a new trial. Because this question is grounded in law, we are "on the same footing as the trial court in determining the correct law to be applied and the broad discretion rule loses much of its force and effect." *Bulkmatic*, 860 So. 2d at 444 (citing *Am. Employers' Ins. Co. v. Taylor*, 476 So. 2d 281, 283 (Fla. 1st DCA 1985)).

"[T]o preserve challenges for cause to prospective jurors, the [objecting party] must 'object to the jurors, show that he or she has exhausted all peremptory challenges and requested more that were denied, and identify a specific juror that he or she would have excused if possible.'" *Matarranz*, 133 So. 3d at 482 (quoting *Kearse v. State*, 770 So. 2d 1119, 1128 (Fla. 2000)). The Florida Supreme Court earlier explained in *Carratelli*: "'By not renewing the objection prior to the jury being sworn, it is presumed that the objecting party abandoned any prior objection he or she may have had and was satisfied with the selected jury.'" 961 So. 2d at 318 (quoting *Zack v. State*, 911 So. 2d 1190, 1204 (Fla. 2005)). But the rule of preservation in these circumstances is not dogmatic; "[t]o hold otherwise would be to embrace form and eschew substance." *Townsend*, 567 So. 2d at 928. As the supreme court pointedly remarked in *Matarranz*: "*Carratelli* and related case law demonstrate that it is the objection/re-objection process—not the re-listing of specific, individual, and previously objected-to jurors— that is the decisive element in a juror-objection-preservation analysis." 133 So. 3d at 482 (citing *Carratelli*, 961 So. 2d at 318; *Kearse*, 770 So. 2d at 1128; *Joiner v. State*, 618 So. 2d 174, 176 (Fla. 1993)). Consequently,

> [o]nce counsel has noted that he or she would strike a specific juror for cause, and again renews that objection **before the jury is sworn**, counsel has accomplished the purpose which underlies the *Carratelli* logic: to provide a

13

trial court with notice that counsel believes a juror has been retained in error, and **to provide the court with a final opportunity** to redress the situation.

*Id.* at 483 (emphasis added). The goal of providing the trial court with notice and an opportunity to "redress the situation" was the central concern addressed by our decision in *Bulkmatic*, where we held that counsel's failure to request additional peremptory challenges—"which would have given the trial court the opportunity to either grant or deny the request"—compelled our conclusion that the issue had not been preserved. 860 So. 2d at 446. We consider that concern to have been satisfied under the instant circumstances.

Just moments prior to the jury's being sworn, counsel for GEICO clearly and succinctly presented his argument to the trial court that juror 13 should be removed for cause. Hence, "[t]he trial court was on notice that defense counsel was dissatisfied with the jury panel due to counsel's objection at the time the jury was sworn." *Matarranz*, 133 So. 3d at 484. What is more, when the trial court specifically announced that it would not "back strike" juror 13 unless it was "clear that he should be stricken for cause," the court effectively removed any option from counsel of requesting an additional peremptory strike. As a result, for purposes of preserving the issue for appeal, in view of the trial court's announcement, requesting an additional peremptory strike would have been futile. *See Baily v. State*, 224 So. 2d 296, 297 (Fla. 1969) (holding that in view of the trial court's announced intention, "[t]he attorney was not required to pursue a completely useless course when the judge had announced in advance that it would be fruitless"); *Smith v. State*, 143 So. 3d 1194, 1196 (Fla. 1st DCA 2014) (acknowledging the general rule that "a party must renew an objection to a peremptory strike before affirmatively accepting the jury," but holding that "if the jury is sworn only minutes after the initial objection, an explicit renewal of the objection is not necessary"); *Gootee v. Clevinger*, 778 So. 2d 1005, 1009 (Fla. 5th DCA 2000) ("In this case, because of the specific objection communicated to the judge and the proximity of this objection to the swearing of the jury, there is no question that the judge understood and rejected Gootee's consistently maintained position that the judge had erred. It would have been futile for the lawyer

to repeat what he had just told the judge."); *Kidd v. State*, 486 So. 2d 41, 41 (Fla. 2d DCA 1986) (holding that "[a]n attorney is 'not required to pursue a completely useless course when the judge had announced in advance that it would be fruitless,'" where the state contended "that the defense motion was a request to challenge the jurors for cause, not a request to exercise the remaining peremptory challenges," and "the trial court had already stated that no juror could be challenged at that point because all jurors had already been accepted by the state and the defense"); *Bell v. State*, 338 So. 2d 1328, 1329 (Fla. 2d DCA 1976) (holding that where the trial court erroneously ruled that each party was entitled only to six peremptory challenges, the appellants' attorneys were "'not required to pursue a completely useless course,'" by requesting a seventh in order to be "heard to complain" of the alleged error, quoting *Bailey*, 224 So. 2d at 297). Accordingly, we hold that the issue before us was effectively preserved.

## III.

For all these reasons, we affirm the trial court's order granting GEICO a new trial.

AFFIRMED.

OSTERHAUS, J., concurs, and BILBREY, J., dissents with opinion.

––––––––––––––––––––––––––

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

––––––––––––––––––––––––––

BILBREY, J., dissenting.

Under Florida Supreme Court precedent, GEICO's challenge for cause to juror 13 was not preserved because counsel for GEICO did not request an additional peremptory challenge when the challenge for cause was denied. It was therefore error for the trial court to grant a new trial based on an unpreserved claim of juror

15

bias.* I would therefore reverse the trial court's order granting a new trial and reinstate the jury verdict for Appellant Movita Sanchez.

As the majority opinion recognizes, one of the requirements to preserve a claim of trial court error for failure to strike a juror for cause is for the party challenging the juror to "show that he or she has exhausted all peremptory challenges and requested more that were denied." *Kearse v. State*, 770 So. 2d 1119, 1128 (Fla. 2000); *see also Matarranz v. State*, 133 So. 3d 473 (Fla. 2013). The majority excuses GEICO's trial counsel's failure to request an additional peremptory because the majority presumes that the trial court would have rejected such a request. I respectfully submit that this is speculation and precisely the reason why the request for an additional peremptory challenge must be made for the claim of error to be preserved.

When the trial judge was advised of GEICO's potential issue with juror 13, the judge stated, "I'm not going to back strike [juror 13] unless it's clear that he should be stricken for cause." The majority contends that this was an unequivocal statement by the trial judge that even if GEICO asked for more peremptory challenges none would have been granted. But I read the trial judge's statement as merely reciting the obvious. At the point when juror 13 was brought back for additional questioning regarding potential bias, GEICO had exhausted all of its peremptory challenges on other members of the venire. So only a challenge for cause was appropriately before the court.

There would have been no reason for the trial court to consider an additional peremptory challenge before deciding whether

_____

*Since in my view the lack of preservation of the issue of juror bias due to failure to request an additional peremptory mandates reversal, I would not address the issue of whether the trial court was correct to find bias as to juror 13 or whether the objection for cause to juror 13 needed to be renewed before the jury was sworn for trial in order to be preserved.

GEICO had a valid challenge for cause to juror 13. It is certainly possible that the trial judge would have denied a request for an additional peremptory challenge after denying the challenge for cause to juror 13. But it is equally possible that the trial judge, recognizing that GEICO's claim of bias with juror 13 presented a close issue, could have permitted an additional peremptory challenge to eliminate any possibility of error. *See Busby v. State*, 894 So. 2d 88, 97 (Fla. 2004) ("A defendant cannot demonstrate prejudice if the trial court grants the same number of additional peremptories as cause challenges that were erroneously denied."). *See also Lezcano v. State*, 177 So. 3d 1024 (Fla. 3d DCA 2015). I agree that attorneys are not required "to pursue a completely useless course when the judge had announced in advance that it would be fruitless," *Bailey v. State*, 224 So. 2d 296, 297 (Fla. 1969), but here the trial judge's position on an additional peremptory was not discussed or known.

While we normally review a trial judge's decision to grant a new trial under an abuse of discretion standard, whether an objection to a juror is preserved is a legal issue which we review de novo. *See Bulkmatic Transport Co. v. Taylor*, 860 So. 2d 436 (Fla. 2003). As in *Bulkmatic Transport*, this issue is not preserved because "counsel failed to request additional peremptory challenges, which would have given the trial court the opportunity to either grant or deny the request." *Id.* at 446. Therefore, as in *Bulkmatic Transport*, it was error for the trial court to grant a new trial on an unpreserved claim of juror bias. Since the majority affirms the trial court's decision granting a new trial, I respectfully dissent.

_____

Charles F. Beall, Jr., of Moore, Hill & Westmoreland, P.A., Pensacola, and John W. Wesley of Wesley, McGrail & Wesley, Fort Walton Beach, for Appellant.

Angela C. Flowers of Kubicki Draper, Ocala, for Appellee.