727 So.2d 1005 (1999)
PALM BEACH ROAMER, INC., Appellant,
v.
William P. McCLURE, Albert Schneider, et al., Appellee.
No. 97-1102.
District Court of Appeal of Florida, Fifth District.
February 12, 1999.
Rehearing Denied March 22, 1999.
Michael J. Ferrin, West Palm Beach, for Appellant.
Thomas E. Ice, of Barwick, Dillian, Lambert & Ice, P.A., Miami, for Appellee.
THOMPSON, J.
Palm Beach Roamer, Inc. ("PBR"), timely appeals from a final judgment in part finding Albert Schneider and Schneider Mills, Inc. (collectively, "Schneider") not liable for fraud and conspiracy to commit fraud. Specifically, PBR challenges the directed verdict for Schneider on the fraud claim.[1] We affirm.
In a three-count complaint against William P. McClure, McClure Aircraft, Inc. (collectively, "McClure"), and Schneider, PBR alleged that, in 1993, Schneider had an aircraft for sale and retained McClure to find a buyer. McClure, in turn, retained Discovery Aviation, Inc., whose agent, Gary Kimball, advertised the plane for sale. David A. Johnson, an employee of PBR, saw the advertisement and contacted Kimball. Kimball represented that the plane was owned by Discovery Aviation and was in excellent condition. Johnson and F. Lee Bailey, president of PBR, inspected the plane and its log books, and took the plane for a test flight. Thereafter, PBR bought the aircraft for $129,000.
PBR alleged that, shortly after the sale, it learned that Schneider held title to the plane at the time of the transaction. Also, after the purchase, PBR took the plane to Downtown Airpark in Oklahoma for maintenance and inspections. There, PBR learned that Downtown Airpark had inspected the same plane in February 1992 and found "excessive wing spar corrosion."[2] The inspection is *1006 known in the industry as a "208 inspection." The inspection results and a notation about the necessity for repair or replacement of the lower spar cap "prior to further flight" had been recorded in the plane's log book.
PBR alleged McClure and Schneider knew the plane had failed the inspection but decided to have the plane inspected by another organization which was not told about the previous inspection results. PBR further alleged McClure removed the results of the previous inspection from the log book with Schneider's knowledge and consent, and Bailey and Johnson were not told of the failed inspection when they went to see and test fly the plane.
Count I of the complaint charged McClure and Schneider with fraudulently concealing the dangerous condition of the plane and misrepresenting its true condition. Count II charged the defendants with conspiring to commit fraudulent concealment, and Count III sought punitive damages.
At trial, McClure, who is in the business of selling aircraft, testified that he originally sold the subject aircraft to Schneider in 1986. In 1992, McClure found a tentative purchaser for the plane. A pre-purchase inspection was done by Downtown Airpark in Oklahoma in February 1992. McClure learned that the plane had failed the 208 inspection and that repairs would cost anywhere from $55,000 to $100,000. Downtown Airpark placed in the plane's log book a computer-generated sticker which showed the inspection results and the requirement for repair or replacement of the wing spar cap. There was conflicting evidence regarding whether the sticker was actually affixed to a page in the log book or merely placed loosely in the book.
McClure advised Schneider of the failed inspection and repair estimates. After the sale fell through, McClure told Schneider he disagreed with the results of the inspection done by Downtown Airpark. McClure testified that if a pre-purchase inspection reveals a defect and the prospective buyer rejects the plane, the owner has the option to have a second inspection done by another company. He suggested this to Schneider and told him that this is acceptable practice within the industry. Schneider, who is not in the business of buying and selling aircraft and who has no expertise regarding wing spar inspections, agreed to a second opinion.
The wing spar had not been repaired or replaced when, in April 1992, McClure arranged to have a second 208 inspection performed by Aero Inspection Services. The Aero inspector neither saw the log book containing the results of the prior inspection nor was advised that the plane had previously failed the inspection. McClure did not reveal the prior results because he wanted "an unbiased inspection."
When the plane passed the second inspection, McClure removed the Downtown Airpark sticker from the log book and discarded it, finding it "inaccurate" and superseded by the Aero inspection results. He then had the Aero inspector make a log book entry indicating a "satisfactory inspection." McClure testified that FAA rules permit an inspection report to be discarded when superseded by a subsequent inspection. He faxed Schneider copies of both inspection results and a note advising Schneider of the substitution made in the log book.
Schneider decided to keep the plane after learning it had passed the second inspection. However, in January 1993, he traded in the plane to purchase a larger one from McClure. McClure took possession of the plane, although no paperwork was generated to effect a change of title. Gary Kimball of Discovery Aviation, Inc. bought the plane from McClure for $111,000 on or about 31 January 1993. McClure stated that he felt he owned the plane and thought it unnecessary to obtain Schneider's permission to sell it to Kimball. Again, no bill of sale was generated. McClure did not disclose the failed 208 inspection to Kimball and he was not involved in the subsequent transaction between Kimball and PBR. He testified, however, that he knew of Kimball's plans to sell the plane and that Kimball ultimately received less than his asking price to compensate for certain other defects.
PBR put a $5,000 deposit on the plane on 23 February 1993, and the sale was completed on 3 March 1993. A bill of sale dated 23 February 1993 was generated for the *1007 Schneider-McClure sale, and Schneider took delivery of the new plane "around the end of February." A bill of sale dated 24 February 1993 evidenced the sale of the plane by McClure to Kimball, and McClure testified that Kimball paid him then.
At the close of the evidence, Schneider and McClure moved for directed verdicts. The court granted Schneider a directed verdict on the fraud claim, finding that Schneider made "no statement ... as to any representation concerning ... the concealment of the failed 208 inspection." The court further found PBR's basis for finding Schneider liable "smacks more of conspiracy than the agency relationship theory." The court thus denied Schneider's motion for directed verdict on the conspiracy count. Thereafter, the jury found that McClure had committed fraud and awarded PBR $70,000 in compensatory damages, but denied punitive damages.[3] The jury further determined that Schneider and McClure did not conspire to commit fraud.
PBR argues it produced sufficient evidence to show Schneider's active involvement in concealing the results of the failed 208 inspection, Schneider's ownership and control of the plane when PBR agreed to purchase it, and a principal/agent relationship between Schneider and McClure which would justify holding Schneider liable for fraud. Therefore, PBR argues, the trial court erred in directing a verdict for Schneider.
A directed verdict is proper where the evidence and reasonable inferences therefrom, considered in a light most favorable to the nonmoving party, fail to establish a prima facie case of the claim asserted. Reams v. Vaughn, 435 So.2d 879 (Fla. 5th DCA 1983). To prove a prima facie case of fraud against Schneider, PBR had to produce evidence sufficient to show that: (1) Schneider knowingly made a false statement of material fact or concealed a material fact; (2) Schneider intended to induce PBR to act on the statement; (3) PBR relied on the statement; and (4) PBR suffered damages as a result of such reliance. Essex Ins. Co., Inc. v. Universal Entertainment & Skating Center, Inc., 665 So.2d 360 (Fla. 5th DCA 1995). To hold Schneider liable for the fraud committed by McClure, PBR had to prove that McClure knowingly made a false statement of material fact or concealed a material fact, and that McClure was Schneider's agent acting within the scope of his authority. Barth v. Khubani, 705 So.2d 72 (Fla. 3d DCA 1997).
The trial court correctly found no evidence that Schneider himself made any affirmative statement concerning the condition of the plane. It was Kimball who allegedly told PBR's representatives the plane was in excellent condition. Furthermore, the evidence did not show that Schneider himself concealed the failed 208 inspection. Rather, McClure concealed those results from Kimball while the log book showed that the plane passed the inspection by Aero Inspection Services.
In addition, the evidence did not show McClure was acting as Schneider's agent when the misrepresentation occurred. Although Schneider held legal title to the plane until PBR purchased it, he had surrendered possession of the plane and its log books to McClure in January 1993, essentially passing equitable title to McClure. Indeed, McClure testified that he felt he owned the plane once he took possession of it and considered it unnecessary to notify Schneider that Kimball had purchased it. PBR presented no evidence that Schneider knew of any transactions concerning the plane after he traded it. The bill of sale dated 23 February 1993 and McClure's testimony that he delivered Schneider's new plane "around the end of February" permit speculation, but not a reasonable inference, that McClure was to sell the trade-in on Schneider's behalf before delivering the new plane. Whereas it was clear that McClure acted as Schneider's agent in the 1992 tentative sale, the jury could not reach the same conclusion regarding the PBR transaction. It was during the later transaction that the fraud occurred and not in 1992. Thus, PBR failed to prove a prima facie case of fraud against Schneider directly *1008 or under agency principles. Accordingly, the trial court correctly directed a verdict in Schneider's favor.
AFFIRMED.
GRIFFIN, C.J. and HARRIS, J., concur.
NOTES
[1] Schneider cross-appeals the denial of his motion for directed verdict on the conspiracy claim. The jury verdict of no liability for civil conspiracy renders the cross-appeal moot.
[2] The wing spar is a structural part of the wing. If the spar fails, the wing can break off in turbulent conditions during flight.
[3] The court denied McClure's directed verdict motion on both counts. He did not appeal the final judgment against him.