LEWIS, J.
Appellant, Heartland Express, Inc. of Iowa, appeals a final judgment entered in favor of Appellee, Mark Farber, as Limited Guardian of the Property of Juan Torres, and the trial court’s order granting a new trial. Appellant contends that the trial court erred in granting summary judgment on the issues of negligence and contributory negligence, in denying its motion for a directed verdict on the issues of negligent training and ratification, the grounds upon which Appellee sought punitive damages against Appellant, and in granting a new trial on the issues of wan *148 tonness and punitive damages. In his cross-appeal, Cross-Appellant/Appellee contends that the trial court erred in denying his motion for a directed vérdict ón the issue of wantonness and in denying his motion for attorney’s fees filed pursuant to Florida’s offer of judgment statute, section 768.79, Florida Statutes, For the following reasons, we reverse the order -granting a new trial but affirm the order denying Cross-Appellant’s fee motion. We otherwise affirm the final judgment without further, comment.
In 2007, Juan Torres filed a negligence action against Appellant in Florida,'alleging that Willie 'Jones, one of Appellant’s' drivers at the time, operated his tractor-trailer in a negligent manner when he collided with the disabled van in which Torres was a passenger while the van was being towed on a highway in Alabama. In June 2010, both sides filed a proposal for settlement upon the other party, neither of which was accepted, In July 2010, Appellant successfully moved for summary judgment as .to the issue of choice of law. Appellant asserted, and the trial court, agreed, that Alabama law should be applied to the issues of liability in the case given' that Alabama had the most' significant relationship with the parties. In 2014, Appellee moved in limine to limit the testimony of Trooper Jason Black, arguing that his deposition testimony was based exclusively on photographs of the accident scene that he could not verify, hearsay statements from unknown witnesses concerning-the actions taken -by Torres in the disabled van just prior to the collision with Jones, and a limited inspection of the scene where no measurements were taken and no accident reconstruction was performed. The trial court granted the motion in limine, setting forth in' part, “Should [Appellant] seek admission of such testimony, .it, must proffer the testimony at trial and establish the proper predicate for its admission under Alabama law.” Prior to trial, the -trial court ruled that while the issue of duty and breach of duty for purposes of the negligence claim had been decided through summary judgment, the issue of proximate causation would be decided-by the jury.
During trial, portions of the videotaped depositions of Mr. Jones, the tractor-trailer driver, were played for the jury. Jones described the accident, testifying that he first saw the van in which Mr. Torres was a passenger as the van, which was being towed by a pickup truck, was “[c]oming onto the interstate.” Jones, who had been traveling at .his top speed of sixty-three miles per hour when he first saw the slow-moving van, looked to the left but was unable to move into the left lane. He affirmatively responded when asked if he slowed down- a little, if he had nine-tenths of a mile to slow down but could not do so, and if- he thought he was in danger of getting into an accident with the van. Jones slammed on his brakes when he realized he was about to hit the van. When asked if he did not engage in “an emergency braking” until he was less than a car-length away from the van, he replied, “Correct, correct,” When asked- if he should have applied his brakes harder, he replied, “Yes, sir.” After the impact with the tractor-trailer, the van became disconnected from the pickup truck and hit a tree, causing injury to Torres.
Appellee later called Walter Ansel Kennedy, a forensics accident reconstructionist, who testified that Jones “could have applied light braking, moderate braking and 'heavy braking and been able to' decrease his speed from 60 to 45 ... at a point before the point of impact so that the tractor would not impact the van.” Kennedy saw no evidence that the individual who was driving the pickup truck that was *149 towing the van did anything to cause the accident.
Appellant’s counsel later read portions of the deposition of Mark Lee Edwards, a human factors engineer, into evidence. Edwards testified that Jones’s “performance” matched what he would expect"'from an alert and attentive driver. He disagreed with any assessment that Jones failed to keep a safe and prudent “lookout.” .
After the trial court ruled that Trooper Black could testify as to his opinions' regarding the positioning of the vehicles pri- or to the accident, Appellant played the videotaped deposition of Black for the jury. Black, who was a road trooper when the accident occurred, was also a traffic homicide investigator/reconstructionist. Black went to the accident scene in order to assist another trooper. When asked if he had an independent recollection of the accident, he replied in part, “I remember going out there. I didn’t actually firsthand investigate the crash. When I arrived on scene, Trooper Lashley, he had a lot going on, so he asked me to take some photographs ... We also spoke with the people who were out there When asked if it was clear that Jones rear-ended the van in the van’s lane, Black testified that it appeared “from where [he] looked at it out there” that the van “snatched” or jackknifed prior to the collision with the tractor-trailer. He further testified:
As they were traveling along, if the van were to try to steer to this direction, if he was not connected, he would be able to steer away. But if you steer that way, it’s going to cause the front of the towing vehicle, the truck, to go out into the other lane. Then as the towing vehicle recorrects, that’s going to go ahead and it’s going [to] bring the back of the van out into the other travel lane, into the fast lane.
When asked where the impact occurred, Black replied, “I would have to go out there and look and .check the pictures and everything, but I believe it happened right there on the—just about on the dotted line, where the impact occurred.” After testifying that Trooper Lashley determined that the point of impact was in the slow lane, Black testified that, based upon his experience, that was “probably incorrect.” Black further testified that the van and pickup truck impacted one another prior to the collision with the tractor-trailer.
Following Black’s testimony, the trial court ruled that, “to be fair,” it would permit Appellee’s counsel, who “did not know about [the court’s] ruling as to Mr. Black ... until [the court] made it,” to call Walter Kennedy in rebuttal to testify “about the physical evidence of impact pri- or to collision with the tractor-trailer.” When later asked by Appellee’s counsel whether his analysis or any accident, photographs or evidence showed that there was any movement of the van and the pickup truck prior to the impact by the tractor-trailer, Kennedy replied, “No, sir; there were not.”
In ■ its verdict, the jury found that Jones’s negligence was a cause of the accident and Torres’s injuries and damages. The jury awarded Torres $888,417.57 for past and future medical and life care expenses and past and future pain and suffering. The jury found that Torres had not proven that Jones’s conduct was wanton. Given that finding, the jury did not determine, for purposes of awarding punitive damages, whether Appellant implicitly approved or ratified any wanton conduct on the part of Jones or whether Appellant used Jones’s services without proper instruction with a disregard for the rights and safety of others. -
*150 Following entry of the final judgment, the trial court denied Appellant’s amended motion for judgment notwithstanding the verdict and for a new trial. It also denied Appellee’s motion for attorney’s fees, which was filed pursuant to the proposal for settlement filed by Appellee in 2010. The trial court found that the resolution of the case was controlled by Southeast Floating Docks, Inc. v. Auto-Owners Insurance Company, 82 So.3d 73 (Fla. 2012), in which the supreme court held that section 768.79 does not apply in situations where the parties have agreed to be governed by the substantive law of another jurisdiction. The trial court noted that the parties in this case had stipulated multiple times that Alabama law applied to the substantive issues in the case' and that Florida law applied to the procedural issues. The trial court also noted that several of the stipulations occurred after Southeast Floating Docks, Inc. was issued.
The trial court granted Appellee’s motion for new trial as to the issues of wantonness and punitive damages based upon its determination that it erred in allowing Trooper Black to testify without a proffer and without the necessary predicate, that Black’s testimony was impermissibly based upon his subjective beliefs and speculation, and that Black’s testimony unfairly and prejudicially surprised Appellee’s counsel. This appeal and cross-appeal followed.
The abuse of discretion standard of review is generally applicable to a ruling on a motion for new trial. State Farm Mut. Auto. Ins. Co. v. Williams, 943 So.2d 997, 999 (Fla. 1st DCA 2006). However, when a motion for new trial addresses issues of law, the standard of review is de novo. Id. In Bulkmatic Transport Company v. Taylor, 860 So.2d 436, 444 (Fla. 1st DCA 2003), we determined that because the trial court did not base its new trial order on a finding that the verdict was contrary to the manifest weight of the evidence, but instead based it upon four grounds that were essentially legal in nature, the trial* court was not entitled to the broad deference generally afforded to trial courts when they rule on a motion for new trial. We further set forth, “[A] trial court’s error in the acceptance or rejection of evidence does not necessarily constitute harmful error.... It is only ‘when a substantial right of the party is adversely affected that a trial court may grant a new trial on this basis.’” Id. at 447 (citation omitted). When a trial court is asked to grant a new trial on .the basis of evidentia-ry errors, the court, in essence, sits as an appellate court and “can only reverse itself if the error was substantially prejudicial.” Id. at 447-48.
Contrary to Appellant’s argument, the trial court was correct in determining that Trooper Black’s testimony should not have been admitted into evidence. Not only did Black testify that he did not “actually firsthand investigate the crash,” but also when he was later asked if he thought Trooper Lashley’s determination that the crash occurred in the “slow lane' basically” was incorrect, he replied, “Based on my experience, I would say it’s probably incorrect.” While Appellant relies upon Black’s statement that it' “appealed] from where [he] looked at it out there” that the van and pickup truck jackknifed, his answer was based upon the theory that Torres had steered the disabled van. Yet, any mention of Torres steering the vehicle came from statements made by unknown van occupants. Moreover, when ’he was asked if the impact occurred in the non-fast lane, Black testified, “I would have to go out there and look and check the pictures' and everything, but I believe it happened ... just about on the dotted line ....” As the trial court found in its order granting a new trial, Black’s testimony was primarily *151 based upon hearsay and speculation and should have been ruled inadmissible. See Perez v. Bell S. Telecomm., Inc., 138 So.3d 492, 499 (Fla. 3d DCA 2014) (noting that under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), an expert’s subjective belief and unsupported speculation are inadmissible).
With that said, we agree with Appellant that admitting Black’s testimony did not substantially prejudice Appellee and entitle him to a new trial on the issues of wantonness and punitive damages. Under Alabama law, wantonness is defined as the “conscious doing of some act or the omission of some duty while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result.” Ex parte Essary, 992 So.2d 5, 9 (Ala. 2007). While negligence is usually characterized as inattention, thoughtlessness, or .heedlessness, implicit in wantonness is a conscious act with knowledge of danger. Id. Black’s testimony had no relevance to the issue of wantonness. In arguing wantonness to the jury, Appellee’s counsel focused on Jones’s state of mind, while asserting that Jones never had the conscious intent that he needed to slow down. Specifically, counsel argued, “And that’s why we say Willie Jones was wanton. Willie Jones’ conduct was wanton because he knew there was a problem, he knew he had to take action, he knew,, if he didn’t take action, someone was going to get hurt.” Appellee’s counsel did not mention Black’s testimony in the context of wantonness, but instead argued that Black was not called to the scene to conduct an accident reconstruction.
Appellee contends on appeal that in light of the fact that Jones himself testified as to all of the elements of wantonness, “there really is no other explanation other than .Black’s theory as to why the jury- would come ‘to such an erróneous opinion, which was- contrary to the established facts ....” In our opinion, however, Appellee’s “explanation” is based upon speculation and conjecture as to why the jury found no wantonness on Jones’s part. It is entirely possible that the jury accepted Jones’s testimony as to what occurred but simply did not find that his actions rose to the level of a reckless or conscious disregard of the safety of others, especially given Appellant’s expert’s testimony that Jones acted as an alert and attentive driver would have. Had Jones testified that he.made no attempt to move into the left lane while knowing that he was quickly approaching a vehicle, the jury may have found that his conduct was wanton. It is not reasonable though to assume that it was Black’s testimony that led to the jury’s verdict on a lack of wantonness. Given that the testimony pertained to causation, an acceptance of such would have precluded a finding that Jones was a cause of the accident. Yet, the jury in this case did, in fact, make such a finding. 'While Appellee’s counsel may have been surprised that the trial court allowed Black’s deposition to be played, that surprise does not equate to substantial prejudice, particularly where the trial court permitted Ap-pellee to call Kennedy in rebuttal. Kennedy testified that nothing he saw in the evidence showed that either the pickup truck or the van moved prior to the accident, which contradicted Black’s testimony that the van and pickup truck jackknifed prior to the collision with the tractor-trailer. Because Appellee was not substantially prejudiced by the admission of Black’s testimony, he is not entitled to a new trial on the issues of wantonness and punitive damages. We, therefore, reverse the order granting a new trial.
*152 ■ Turning to the cross-appeal; Cross-Appellant contends that the trial court erred in denying his motion for attorneys’ fees filed pursuant to section 768.79(1), Florida Statutes, which provides:
In any civil action for damages filed in the courts of this state, if a ... plaintiff files a demand for judgment which is not accepted by the defendant ... and the plaintiff recovers a judgment in an amount at least 26 percent greater than the offer, she or he shall be entitled to recover reasonable costs and attorney’s fees incurred from the date of the filing of the demand. ■
In ruling that Cross-Appellant Was not entitled to fee's under section 768.79, the trial court correctly found Southeast Floating Docks, Inc. v. Auto-Owners Insurance Company, 82 So.3d 73 (Fla. 2012), controlling, Jn that case, the Florida Supreme Court answered in the negative the certified question of whether “section 768.79 applies] to cases that are governed by the substantive law of another jurisdiction and, if so, is this statute applicable even to controversies in which the parties have contractually agreed to be bound by the substantive laws of another jurisdiction.” The supreme court held that “because an award of attorney’s fees under Florida’s offer of judgment statute is a substantive right, section 768.79' will not apply in instances where the parties have agreed to be governed by the substantive law of another jurisdiction.” Id. at 81. Applying its holding to the facts of the case before it, the supreme court concluded that “Southeast” was not entitled to costs .and fees under section 768.79 “because Southeast and Auto-Owners have contractually agreed to be bound by the substantive laws of Michigan.” Id. at 82.*
As for the stipulation itself in this case, Cross-Appellant argues that while a stipulation can be comparable to a contract in certain instances, both sides invoked section 768.79 when exchanging proposals for settlement in June 2010. According to Cross-Appellant, this exchange served as ■an acknowledgment by both sides that Florida law would govern the issue of attorney’s fees. The problem with this argument, however, is that the parties, according to the language used in multiple motions and memoranda filed after June 2010, stipulated that Alabama law would govern the substantive issues in the case. On appeal, Cross-Appellant acknowledges the stipulation' language and represents that it was unfortunate that “the erroneous language [concerning a stipulation] would ... be copied and pasted into various pleadings in the future by both [Cross-Appellee] and Torres ....” According to Cross-Appellant, the phrase “all substantive issues” as used in those various motions and memoranda should be interpreted to mean -issues of liability. However, the language used by Cross-Appellant’s counsel was not that narrowly tailored. Instead, Alabama law was to apply to the substantive issues “in the case.” We find it telling, as did the trial court, that Cross-Appellant’s counsel con *153 tinued to use the same stipulation language after the issuance of Southeast Floating Docks, Inc., which made clear that attorney’s fees awarded under section 768.79 are substantive in nature. Based upon such, we affirm the trial court’s order denying Cross-Appellant’s attorney’s fee motio.n.
AFFIRMED in part; REVERSED in part; and REMANDED for the reinstatement of'the jury’s verdict on the issue of wantonness.
ROBERTS, J., CONCURS; WINSOR, J., CONCURS IN JUDGMENT WITH OPINION.

 The supreme court disapproved of both BDO Seidman, LLP v. British Car Auctions, Inc., 802 So.2d 366 (Fla. 4th DCA 2001), and Bennett v. Morales, 845 So.2d 1002 (Fla. 5th DCA 2003), where the Fourth and Fifth Districts held that section 768.79 applied to all civil actions for damages brought in Florida "even where the substantive law of another jurisdiction is applied” and that section 768.79 mandated "the application of the statute irrespective of the parties’ choice of applicable substantive law,” 82 So.3d at 82. In BDO Seidman, LLP, the Fourth District explained that "the parties in the malpractice case had agreed that Tennessee law governed the case. 802 So.2d at 367. In Bennett, the Fifth District noted that the parties to the securities fraud case had agreed that the substantive law of Virginia applied to the case. 845 So.2d at 1004.